## HAMBEL v. WILLIAMS, assignee.

**New trial: NEWLY-DISCOVERED EVIDENCE.** If newly-discovered evidence is material, and it is shown that the applicant did not know of the evidence before suit brought, and could not by the use of reasonable diligence have sooner discovered it, a new trial should be granted though the evidence is in some degree cumulative.

*Appeal from Marshall Circuit Court.*

THURSDAY, OCTOBER 9.

THIS is an action in which the plaintiff claims a certain quantity of wheat, which he alleges he stored in the warehouse of E. G. Sleight in October, 1872. A specific attachment was prayed and granted, under which the quantity of wheat demanded was taken out of the warehouse of Sleight and delivered to the plaintiff. The suit was first instituted against Sleight, who, becoming a bankrupt, H. P. Williams, his assignee in bankruptcy, was substituted as defendant. The principal issue of fact raised by the pleadings is, whether the wheat was stored with Sleight, or whether the transaction was a sale of the wheat. The jury, under the instructions of the court, found specially that the wheat was "stored."

Defendant filed a motion for a new trial, which was over-ruled, and judgment rendered on the verdict for plaintiff.

Defendant appeals.

*Parker & Rice* with *Henderson, Merriman & Sutton* for the appellant.

*Brown & Sears* for the appellee.

MILLER, J.— The evidence shows that E. G. Sleight had an elevator near the railroad depot in Marshalltown; that in the fall of 1872 he was operating the same; that he bought and shipped wheat, and also received the same in store; that plaintiff delivered to the defendant, at his elevator, from time to time in the month of October, 1872, various quantities of wheat, in all about 600 bushels. The testimony is conflicting on the fact, whether the wheat was sold to Sleight, or merely stored with him. The jury found specially that the wheat had been stored. Without inquiring whether this finding is sustained by the evidence, or whether there was error in some of the court's instructions, we are clear that there was error in the refusal of the court to grant a new trial on the application of the defendant, based upon newly-discovered evidence, in support of which he filed the following affidavits:

STATE OF IOWA, } *ss. :*
Marshall County, }

I, H. P. Williams, being duly sworn, on my oath say that I am the defendant named in the foregoing motion; that before the trial of this cause I endeavored to ascertain the facts involved in the cause named at the head of said motion; that I was informed and believed the truth to be and still believe the truth to be that J. W. Hambel, plaintiff, made all the contract he had with defendant, Sleight, in regard to the wheat in controversy, with J. J. Welsh, Sleight's buyer and weigher, which was a contract of sale and not for storage; that I was informed that said Hambel delivered said wheat when E. G.

Sleight was absent from home, and did not anticipate, and could not, that said Hambel would pretend that he had contracted to store said wheat with said Sleight, in person; that said Sleight was absent from home when the trial occurred, and had been so absent for several days prior to said trial; that he did not return until after said trial was concluded and did not learn the facts he could testify to in regard to said contract, until after the said trial was over; that I expect to prove by said Sleight that he never made any contract whatever in person with plaintiff Hambel, about said wheat, neither for storage nor for sale; that whatever arrangement was made was in his (Sleight's) absence, which facts I believe to be true. I further state that since said trial I have also learned that plaintiff Hambel demanded of said Sleight money for said wheat, and not said wheat, and did not claim or pretend to said Sleight that he had stored said wheat instead of selling the same; also, that said Hambel had been accustomed, before said wheat was delivered by him at Sleight's elevator, to store wheat with said Sleight and receive a regular storage receipt therefor, and not tickets such as he received for the wheat in controversy, and I believe such facts, which I can prove by said Sleight, as above stated, to be true; that I was not informed thereof and could not by reasonable diligence have learned the same before said trial; I further state that I inquired of said Sleight as to the contract with Hambel after I was appointed assignee, and learned that he knew nothing of the contract personally, and was absent from home when the wheat was delivered by Hambel; I also inquired of J. J. Welsh and learned from him that he had received the wheat from said Hambel, or at least the first load and most of the other loads, and that Hambel asked whether it was because Sleight was short of funds that he was not buying wheat, and being informed by said Welsh that such was the case, he replied that would make no difference, and he would leave his wheat as he did not then need the money, which said Welsh understood to be a sale of the wheat; that he said nothing about storage. I also was informed that said Hambel claimed that the wheat was stored because no price

was marked on the wheat tickets he received for the wheat, and from all this information I did not and could not antici-pate that plaintiff would claim he had made a contract with said Sleight, in person, to store said wheat; nor was I informed, until since the trial, that I could prove by said Sleight that said Hambel demanded money for said wheat and not the wheat itself, and not having my attention directed to such fact I did not and could not anticipate the same before the trial. I further state that since said trial I have learned that said Hambel talked with George Glick about the wheat in controversy and wanted said Glick to advise him what to do in getting his money for the wheat, and did not claim or pretend that he had stored the wheat with Sleight; that I did not know and could not know and could not anticipate that said Hambel had con-versed with said Glick as aforesaid before said trial, and first learned the fact on the morning of March 3, 1873, from my attorney, E. C. Rice. I further state that I did not become a party to this suit, entitled at the head of the foregoing motion, until the first day of the present term of this court, and as I am informed and believe, I could not obtain process to compel attendance of witnesses in my behalf before being substituted as defendant, by leave of court, and I did not know that said Sleight would, or expected to, be absent at the time of the trial of this cause.

H. P. WILLIAMS.

Duly sworn to.

I, E. G. Sleight, on oath, say that I never saw J. W. Hambel from the time he first commenced putting his wheat in my elevator that he claims by his attachment now pending in the circuit court of Iowa for Marshall county, until after he had taken the wheat out of said elevator now held by him under the writ in said case. I never had during said time any con-versation with him in T. Brown's office. I never told him he might have his wheat if I had any way to weigh it out; dur-ing all the time referred to I was in Chicago, Ill., except about two days, and that was after his wheat was bought by my

buyer. Mr. Hambel knew the custom of my elevator; he had stored wheat with me and had received regular warehouse receipts therefor. I have bought his wheat for years, and when he stored it and did not sell it, he got his regular warehouse receipt, and during the year 1872, I never made any contract with J. W. Hambel to store any grain for him or authorize any contract to store grain, and never had any knowledge of any having been made for me by any other person.

E. G. SLEIGHT.

Duly sworn to.

I, Geo. Glick, on oath, say that about the 19th, 20th, or 21st of October, 1872, J. W. Hambel came to me and asked what I thought of E. G. Sleight; if I thought he would fail; I told him he was going to bust up. Hambel says I have 500 to 600 bushels of wheat down there; what shall I do? I told him to get the money for it as soon as the Lord would let him, or the wheat. He saw me in a short time again, and said they had promised him the money in the afternoon. In the afternoon I saw him again and he said Sleight had not got home and he had not got his money. I told him to get the money or the wheat, and lose no time, for Sleight had gone up. During all of said conversation he never said any thing about having stored his wheat with Sleight, nor of getting his wheat again, except what I told him to do. I told E. C. Rice the above facts in substance, March 2d, 1873, and before that time had told no one that I knew any thing about the matter.

GEO. GLICK.

These affidavits, with the pleadings in the case, show that the newly-discovered evidence is material; they also show that the defendant did not know of this evidence before the trial; that he could not, by the use of reasonable diligence, have discovered it sooner, and while the evidence is in some degree cumulative, yet it is not merely or exclusively so.

Apellant complied with the requirements of the law entitling him to a new trial for this cause. It should have been granted. Rev., § 3112, sub. 7; *Alger* v. *Merrit*, 16 Iowa, 121; *Manix* v. *Maloney*, 7 id. 81; *Mather* v. *Butler County*, 33 id. 250.

Reversed.